**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | | |
|---|---|---|
| **LISA ELLIS and BETSY BOWLES** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Civil Action No: 2:21-cv-254** |
| | ) | |
| **VIRGINIA DEPARTMENT** | ) | |
| **OF ENVIRONMENTAL QUALITY** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT UNDER THE EQUAL PAY ACT**

This is an action alleging violation of the Equal Pay Act of 1963, to restrain payment of wages to employees of one sex at rates less than the rates paid to employees of the opposite sex, and to collect back wages due to employees as a result of such unlawful payment. When the Commonwealth came to understand in 2019 that the long-standing policy of using pay history to determine a new hire's salary was a biased policy, nothing was done to address the inequity endured by veteran women at the Virginia Department of Environmental Quality ("DEQ"). Plaintiffs ask the Court to enjoin unlawful compensation discrimination and order wages equal to those paid to their male counterparts for performing equal work.

**JURISDICTION AND VENUE**

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343. This action is authorized and instituted pursuant to Sections 16(b) of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(b) to

1

enforce the requirements of the Equal Pay Act of 1963 ("the EPA"), codified as Section 6(d) of the FLSA, 29 U.S.C. § 206(d).

2.      Venue is proper within the United State District Court for the Eastern District of Virginia, Norfolk Division, inasmuch as Defendant conducts substantial business in this District and Division and a substantial part of the employment events or omissions giving rise to the claims occurred in the judicial district and division. 28 U.S.C. §§ 1391; Eastern District Rule 3(C).

## PARTIES

3.      Lisa Ellis received a Bachelor of Science degree in Chemical Engineering from the University of Delaware. She has served DEQ for over 20 years. She began her current employment with DEQ in April 2013 at a starting salary of $51,000 and has worked as a Hazardous Waste Inspector and a Solid Waste Inspector at DEQ.  In her Employee Work Profile ("EWP") dated November 1, 2019, her Role Title & Code was Environmental Specialist II (ESII), her Mapped Title was Guidance & Regulation Coordinator Senior II, and her Work Title was Hazardous Waste Compliance Coordinator. She works in the Central Office in Richmond, Virginia. Her job duties include developing and providing training for inspection staff, guiding a hazardous waste compliance program, and writing revised regulations for the Waste Management Board.

4.     Betsy Bowles received a Bachelor of Science degree from Ferrum College in Ferrum, Virginia with a major in Agriculture and a minor in Business.  She has a Nutrient Management Plan Writer Certification. She worked for the Soil & Water Conservation District in Tidewater prior to her employment with DEQ. She began her employment with DEQ in September 1998 at a starting salary of $31,794. In her EWP dated November 1,

2019, her Role Title & Code was ESII, her Mapped Title was Guidance and Regulation Coordinator – Senior II, and her Work Title was AFO (Animal Feeding Operations)/CAFO (Concentrated Animal Feeding Operations). She works in the Central Office in Richmond, Virginia. Her job duties include technical and procedural implementation guidance, program implementation, permitting, and holding public meetings.

5.     At all relevant times, Defendant the Virginia Department of Environmental Quality ("Defendant" or "DEQ") has been a department of the Commonwealth of Virginia. DEQ was established to protect and improve the environment for Virginians.  DEQ administers state and federal laws and regulations for air quality, water quality, water supply and land protection.

6.     In addition, DEQ programs cover a variety of environmental activities, such as improving the ability of businesses and local governments to protect the environment and offering technical and financial assistance for air and water quality improvements. Through its six regional offices, DEQ issues permits, conducts inspections and monitoring, and enforces regulations and permits.

7.     At all relevant times, Defendant has continuously been a public agency within the meaning of Sections 3(x) of the FLSA, 29 U.S.C. § 203(d).

8.     Defendant's regional offices are operated by a central administrative headquarters at 1111 East Main Street, Richmond, and all matters of hiring and salary are determined at such headquarters for all offices of DEQ. DEQ operates as a single establishment statewide.

9.     At all relevant times, Defendant has acted directly or indirectly as an employer in relation to the named employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

10.     At all relevant times, Defendant has continuously employed employees engaged in the regulation of commerce within the meaning of Sections 3(b), (i), and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i), and (j).

11.     At all relevant times, Defendant has continuously been an enterprise engaged in commerce within the meaning of Sections 3(r) and (s) of the FLSA, 29 U.S.C. §§ 203(r) and (s), said enterprise has continuously been a public agency with regulatory powers affecting interstate commerce.

12.     Both Plaintiffs are or were employed in the role designated by DEQ as Environmental Specialist II.

13.     Plaintiffs were assigned the specific core responsibilities of environmental inspectors in accordance with Virginia and federal regulations and DEQ policies.

14.     Each Guidance and Regulations Coordinator is responsible for DEQ's program strategy in the Commonwealth, for training, program evaluation, technical guidance, quality assurance, and data collection, all with the goal of effective environmental management.

## VIOLATION OF THE EPA

15.     Starting earlier than April 1, 2017, and continuing to July 1, 2019, Defendant has violated Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) and 215(a)(2), by paying Plaintiffs lower wages than those paid to their male colleagues

for performing equal work as Environmental Specialist II, inspectors, all being classified full-time employees.

16.     Ellis started at DEQ in 2013; Bowles in 1998.  Both worked a considerable portion of her career at DEQ when DEQ would use the compensation policies described herein as violating the EPA.

17.     The Commonwealth's Department of Human Resource Management ("DHRM") has Commonwealth-wide responsibility for promulgating compensation policy for state employees, including those employed at DEQ.

18.     Through July 1, 2019, salary offered to each woman by a prior employer, regardless of its bias, was used to determine her starting pay at DEQ, without consideration of whether such prior salary reflected the needs of the DEQ job.

19.     The Attorney General of Virginia, Mark R. Herring, addressed the issue of "previous salary" or "salary history" in a Brief submitted by Virginia as an Amicus, in *Greater Virginia Chamber of Commerce v. City of Philadelphia*, United States Court of Appeals for the 3rd Circuit, Nos. 18-2175, 18-2176, filed September 28, 2018. The Attorney General submitted to the Court that a "persistent gender wage gap is the continuing result of gender discrimination in the workplace---and employers' use of salary history in setting wages perpetuates the gap further still."  *Id.* at Docket 3113047629, at page 10.

20.     Further, the Attorney General maintained that salary history is not a gender-neutral measure of an individual's value to the employer; that an individual's past salary may reflect intentional discrimination, unconscious bias, or systematic undervaluing of work performed by women. *Id.* at page 16.  General Herring asserted that to justify a wage

differential on the basis of salary history is entirely inconsistent with the Equal Pay Act's goal of eradicating pay discrimination reflecting gender-based disparities. *Id.* at page 19.

21.     On June 12, 2019, Governor Ralph S. Northam announced to his Cabinet Secretaries the implementation of his Employment Equity Initiative, "taking steps that are long overdue to ensure that our processes are free of unconscious bias."

22.     On June 20, 2019, the Governor announced to State Employees that the State Compensation Policy would change, a reform that "will eliminate provisions that base starting pay and future salary adjustments solely on previous or existing salary."

23.     Effective July 1, 2019, DEQ discontinued its discriminatory practice by making changes in the DHRM Compensation Policy 3.05.

24.     However, no action was taken, in the aftermath, to remedy the wage disparity suffered and endured by women hired and employed as Environmental Specialists II in the many years prior to July 1, 2019.

25.     Plaintiffs when hired were each required to disclose prior employment and prior salaries on their DEQ job application forms.

26.     DEQ utilized the prior salary data to fix a starting salary for each female employee and similarly, for male employees.

27.     Starting salary has a career impact:  a state employee starting low in salary when compared to her male peers never catches up.

28.     Use of prior salaries reinforces, redoubles and replicates years of historic salary discrimination against female workers.

29.     Prior salary information is not reflective of an employee's knowledge, skills, or abilities, nor his or her value to DEQ; rather, prior salary information reflects the

value placed by another employer on the employee's performance of another job at another time and place and situation.

30.    DHRM also has policy to deal with the possibility that state employees would receive offers of employment by other competitor employers for their services.

31.    Such offers could be offers from the private sector, the public sector, the federal government, another Virginia agency, or the agency of another State or nation.

32.    Receipt of such offers of employment reflects the subject employee's relevant contacts achieved by networking, for example; male employees, long employed in this field, are at an advantage over females.

33.    DEQ has the following policy to the salaries of male putative comparators in this litigation:

> *Competitive Salary Offer.*  When an employee receives an outside higher salary offer, and the employee is deemed critical to the agency's mission and on-going operations, the division director may request that the agency make a competitive offer.  The outside employment offer must be in writing and can be from another State agency (Internal Competitive Salary Offer) or an organization external to the Commonwealth (External Competitive Salary Offer).  In the case of an Internal Offer, the division director can only make one counter offer for a job with a higher salary within the same or higher pay band, and the amount must be approved by Human Resources before being extended to the employee.  Any offer exceeding $5,000.000 (sic) must be approved by the Agency Head or his designee.  The amount of the offer may not exceed the amount of the job offer from the other agency or the maximum salary of the pay band.

(DEQ015285, DEQ Salary Administrative Plan (7th page)).

34.    DEQ has not maintained records which include the written offer.

35.     A prospective employer assesses *his job* and how the new employee would aid *his company* and offering a salary based upon that assessment.

36. DEQ policy requires that a male employee receiving an outside offer must be "deemed critical to the agency's mission and on-going operations" before the offer is met or countered, and Plaintiffs dispute that such determinations were made by DEQ.

37. The salary offers from other employers are extraneous to the duties, responsibilities, and efforts needed to perform the DEQ job; such offers are not job-related.

38. For these and other reasons, such offers are potentially affected by considerations of gender and DEQ is not entitled to use "Competitive Salary Offer," "Competitive Pay Offer," "Competitive Voluntary Transfer," or any similar event as a factor as would entitle a male to increased salary or explain the salary disparity between the male and a comparatively situated Plaintiff.

39. As a result of the acts complained of above, and for other reasons, Defendant unlawfully has withheld and is continuing to withhold the payment of wages due to all such female employees who received lower compensation than their male colleagues. The practice necessarily allowed DEQ to pay wages to females at their start and throughout their careers at less than the rates paid to male employees in the same establishment for substantially equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

40. The unlawful practices complained of in the paragraphs above were willful.

41. The past salary or the competitive job offer of a job applicant cannot be an "other factor other than sex" when used alone *or in combination with job-related factors to fix her new salary*.

42. Two individual Inspectors are joined in this civil action given that 1) they have essentially the same job with the same employer; 2) similar hiring policies and similar

hiring occurrences started each of their careers at DEQ at a lower salary than appropriate; 3) males have been identified as valid comparators to each and there may be individual males who are common comparators; 4) DEQ is the common employer of both Plaintiffs and compensation policies as described in the Complaint applied to both women and to the male comparators; 5)  the legal issue of whether "past salary" or "salary history" is valid and job-related and may be used by an employer to explain disparity is common; 6) the legal issue of whether competitive transfer offers may be used as a job-related justification to explain salary disparity is common; and 7) fairness to the parties and the efficient administration of their dispute with DEQ are furthered by joinder in a single complaint through trial.

43.    The Plaintiffs assert their claims for compensation grounded in each experiencing an initial salary transaction and each enduring disparate pay when compensation policies were applied; such compensation policies not based on job-related criteria.

44.    Common questions of law appear in the questionable validity of the use of such compensation policies to effectuate a pay disparity between male and female employees doing equal work at DEQ, in light of the goals and purposes of the Equal Pay Act.

**PRAYER FOR RELIEF**

Wherefore Plaintiffs respectfully request that this Court:

A.    Restrain any discrimination or retaliation against persons who seek to participate as claimants or witnesses in this matter.

B.      Grant a permanent injunction enjoining DEQ, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating within any of its establishments between employees on the basis of sex, by paying wages to employees of one sex at rates less than the rates at which it pays wages to employees of the opposite sex for substantially equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.  Specifically, enjoin the policy of using Competitive Salary Offers to enhance employee pay.

C.      Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

D.      Grant a judgment requiring Defendant to pay appropriate back wages in amounts to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to Plaintiffs whose wages are being or were unlawfully withheld as a result of the acts complained of above, female employees paid lower compensation than their male counterparts for performing equal work.  Compensation should include amounts to remedy the diminishment of the value of the retirement programs (through the Virginia Retirement System and Federal Social Security) caused by disparate salaries.

E.      Award the Plaintiffs' costs and expenses of this action, including any necessary expert witness fees, along with reasonable attorney's fees for their legal counsel as provided by statute.

F.      Grant such further relief as the Court deems necessary and proper in the public interest, under the Equal Pay Act.

## JURY DEMAND

Plaintiffs request jury trial on all issues of fact.

Respectfully Submitted,


_____/s/ Sydney E. Rab_____
Sydney E. Rab, Esquire (VSB #15105)
The Rab Law Firm
5407 Langdon Drive
Richmond, Va. 23225
Tele: 804-822-8981
Msydrab@comcast.net


_____/s/ Tim Schulte_____
Tim Schulte (VSB #41881)
Blackwell N. Shelley, Jr. (VSB #28142)
Shelley Cupp Schulte, P.C.
3 West Cary Street
Richmond, Va. 23220
(804) 644-9700
(804) 278-9634 [fax]
schulte@scs-work.com
shelley@scs-work.com

_____/s/ Timothy E. Cupp_____
Timothy E. Cupp (VSB #23017)
Shelley Cupp Schulte, P.C.
1951 Evelyn Byrd Avenue, Suite D
Harrisonburg, VA  22803
(540) 432-9988
(804) 278-9634 [fax]
Cupp@scs-work.com


*Counsel for Plaintiffs*